# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41476

United States Court of Appeals
Fifth Circuit

**FILED**
August 30, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

CARLOS ALBERTO FUENTES-CANALES, also known as Carlos Alberto
Fuentes,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before OWEN, SOUTHWICK, and WILLETT, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The petition for panel rehearing is denied. We withdraw the opinions
issued May 22, 2018, and substitute the following opinion.

Carlos Alberto Fuentes-Canales pleaded guilty to re-entering the United
States illegally, an offense under 18 U.S.C. § 1326. He had previously been
convicted by a Texas state court for burglary of a habitation,[1] and that offense
was the predicate for the federal district court's application of a 16-level
sentencing enhancement under § 2L1.2(b)(1)(A)(ii) of the federal Sentencing

---

[1] TEX. PENAL CODE ANN. § 30.02(a) and (d) (West 2008).

No. 15-41476

Guidelines in effect in 2014,[2] without objection from Fuentes-Canales. The federal district court sentenced Fuentes-Canales to 50 months of imprisonment and three years of supervised release. On appeal, Fuentes-Canales contends that his Texas conviction was not for generic burglary[3] and that the district court therefore plainly erred in applying a 16-level enhancement. This court, sitting en banc, issued *United States v. Herrold*[4] while Fuentes-Canales's appeal was pending. That decision abrogated prior decisions of this court that had held that a conviction under Texas Penal Code § 30.03(a)(1) is generic burglary.

It is now plain in light of *Herrold* that the Fuentes-Canales's conviction for burglary does not qualify for purposes of § 2L1.2(b)(1)(A)(ii)'s 16-level enhancement. However, we affirm the district court's judgment because Fuentes-Canales failed to satisfy the fourth prong of plain-error review.[5]

## I

Fuentes-Canales is a citizen of El Salvador and first illegally entered the United States in 1989, when he was 16 years old. He remained in this country for 26 years, and while here, married, became a father, and obtained a divorce. His conviction under Texas Penal Code § 30.02(a) and (d) arose from his unlawful entry into the home of his former wife. After Fuentes-Canales had

---

[2] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (U.S. SENTENCING COMM'N 2014).

[3] *See Taylor v. United States*, 495 U.S. 575, 598 (1990) ("We believe that Congress meant by 'burglary' [in the Armed Career Criminal Act] the generic sense in which the term is now used in the criminal codes of most States."); *id.* ("Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.").

[4] 883 F.3d 517 (5th Cir. 2018) (en banc).

[5] *See generally Rosales-Mireles v. United States*, 138 S.Ct. 1897 (2018) (discussing and applying the fourth prong of plain-error review); *Puckett v. United States*, 556 U.S. 129, 142-43 (2009) (applying the plain-error standard of review and declining, at the fourth prong, to correct the error).

served his five-year term of imprisonment for that offense, he was deported. Approximately two months later, he was found in the United States and pleaded guilty to re-entering illegally.

The Presentence Investigative Report (PSR) concluded that his prior Texas burglary conviction was for "burglary of a dwelling" within the meaning of comment 1(B)(iii) to § 2L1.2 of the United States Sentencing Guidelines, and the PSR recommended the application of a 16-level "crime of violence" increase to Fuentes-Canales's base offense level of 8, pursuant to § 2L1.2(b)(1)(A)(ii).  In addition, Fuentes-Canales has a prior conviction for driving while intoxicated. After applying a three-level reduction for acceptance of responsibility,[6] the total offense level was 21.  His criminal history category was III, which resulted in an advisory guidelines range of 46 to 57 months of imprisonment.

Fuentes-Canales did not object to the 16-level enhancement, and the district court accepted the PSR's recommendations.  The district court imposed a sentence of 50 months of imprisonment and three years of supervised release. Fuentes-Canales now contends that the district court plainly erred in applying a 16-level enhancement and seeks re-sentencing.

## II

Fuentes-Canales's appeal has been pending in our court for a lengthy period of time.  The initial round of briefing was completed in May 2016, but another case, *United States v. Uribe*, that presented similar issues, was also pending.  Because *Uribe* potentially resolved Fuentes-Canales's case, our court administratively held Fuentes-Canales's appeal.   On October 3, 2016, a decision in *Uribe* issued.[7]  It examined whether Texas Penal Code § 30.02(a) was divisible in light of the Supreme Court's decision in *Mathis v. United*

---

[6] *See* U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(a) and (b) (U.S. SENTENCING COMM'N 2014).

[7] 838 F.3d 667 (5th Cir. 2016).

*States*,[8] and concluded that the Texas statute was "elements-based" and therefore that it was "divisible and the modified categorical approach applies to determine which of the provisions of § 30.02(a) was the basis of [a defendant's] conviction."[9]  The *Uribe* opinion also concluded that the district court did not err in applying a 16-level enhancement under § 2L1.2(b)(1)(A)(ii) of the Guidelines.[10]  The mandate in *Uribe* issued February 7, 2017.

On April 11, 2017, a panel of this court issued an unpublished opinion in *United States v. Herrold*, which, dutifully applying *Uribe*, held that § 30.02(a) was indivisible, and that a conviction under that statute was generic "burglary."[11]  Rehearing en banc was granted in *Herrold*, and Fuentes-Canales's appeal was once again administratively held by our court, this time pending the court's en banc decision in *Herrold*.

The en banc court in *Herrold* considered how Texas state courts have construed and applied Texas Penal Code § 30.02(a)(1) and (a)(3), and this court concluded that § 30.02(a)(1) and (a)(3) are indivisible within the meaning of *Mathis* because they "are not distinct offenses, but are rather separate means of committing one burglary offense."[12]  The en banc court further held that § 30.02(a)(3) "is broader than generic burglary."[13]  Accordingly, § 30.02(a) was overinclusive because it included a means of committing an offense that did

---

[8] 136 S. Ct. 2243 (2016).

[9] *Uribe*, 838 F.3d at 671.

[10] *Id.* at 669.

[11] 685 F. App'x 302, 303 (5th Cir. 2017) (per curiam) (unpublished).

[12] *United States v. Herrold*, 883 F.3d 517, 529 (5th Cir. 2018) (en banc).

[13] *Id.* at 536-37; *id.* at 531 (holding that generic burglary requires "intent to commit a crime contemporaneously accompany[ing] a defendant's unauthorized entry" and that Texas Penal Code § 30.02(a)(3) contains no such requirement).

No. 15-41476

not have the requisite elements of generic burglary.[14] The *Uribe* decision was expressly overruled to the extent that it is inconsistent with *Herrold*.[15]

Fuentes-Canales's appeal was assigned to this panel, and we expedited our consideration of the issues he raises.

### III

Because Fuentes-Canales failed to object to the 16-level enhancement in the district court, our review is for plain error under Federal Rule of Criminal Procedure 52(b).[16] "[T]he authority created by Rule 52 is circumscribed."[17] The Supreme Court has "established three conditions that must be met before a court may consider exercising its discretion to correct the error."[18] "There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.'"[19] If these conditions are met, the Supreme Court has said that "Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"[20] This latter limitation is often described as the fourth prong of

---

[14] *See, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Shepard v. United States*, 544 U.S. 13, 30 (2005) (O'CONNOR, J., dissenting) ("Every statute punishes a certain set of criminalized actions; the problem with some burglary statutes, for purposes of the ACCA, is that they are overinclusive.").

[15] *Herrold*, 883 F.3d at 529.

[16] FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

[17] *United States v. Olano*, 507 U.S. 725, 732 (1993).

[18] *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1904 (2018) (citing *Olano*, 507 U.S. 725)

[19] *Olano*, 507 U.S. at 732 (alteration in original).

[20] *Id.* (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936))).

plain error review.[21]  "Meeting all four prongs [of plain-error review] is difficult, 'as it should be.'"[22]

## A

The first and second prongs of plain-error review are satisfied because the district court clearly erred in applying the 16-level enhancement.  When Fuentes-Canales was sentenced, the Sentencing Guidelines provided for a 16-level increase in a defendant's base offense level if he or she previously was removed after being convicted of a "crime of violence."[23]  A "crime of violence," as defined in the commentary to the 2014 Guidelines, included the enumerated offense of "burglary of a dwelling."[24]  To determine whether the Texas offense of burglary of a habitation is equivalent to "burglary of a dwelling," courts apply the categorical approach to compare the offense as defined by the Texas statute with the "generic" definition of burglary of a dwelling.[25]  If the statute does not require that at least each of the elements of generic burglary must be found by the fact-finder or admitted by the defendant, then the state offense is not generic and therefore is not an enumerated crime of violence.[26]

We have applied the generic definition of burglary in the Armed Career Criminal Act (ACCA)[27] to define the enumerated offense of "burglary" in the Sentencing Guidelines.[28]  The principles governing the categorical approach,

---

[21] *See, e.g.*, *Puckett v. United States*, 556 U.S. 129, 142 (2009) ("Puckett contends that the fourth prong of plain-error review likewise has no application because every breach of a plea agreement will constitute a miscarriage of justice.  That is not so.").

[22] *Id*. at 135 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004)).

[23] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (U.S. SENTENCING COMM'N 2014).

[24] *Id.* cmt. n.1(B)(iii).

[25] *United States v. Morales-Mota*, 704 F.3d 410, 412 (5th Cir. 2012) (per curiam).

[26] *See United States v. Hinkle*, 832 F.3d 569, 574-75 (5th Cir. 2016).

[27] 18 U.S.C. § 924(c).

[28] *See, e.g.*, *United States v. Ortega-Gonzaga*, 490 F.3d 393, 394-95 (5th Cir. 2007); *see also United States v. Bernel-Aveja*, 844 F.3d 206, 212-14 (5th Cir. 2016) (relying upon an ACCA case in its analysis of whether the defendant's "burglary of a habitation" conviction qualified for an enhancement under former § 2L1.2).

and the methods announced in *Mathis* for determining whether a statute is divisible, also apply when ascertaining whether a prior conviction was for "burglary" within the meaning of the Sentencing Guidelines.[29] As used in the Guidelines' definition of "crime of violence," "burglary of a dwelling" is a subset of "generic" burglary.[30]

As discussed above, this court held in *United States v. Herrold*, that Texas Penal Code § 30.02(a)(3) sets forth a means of committing an offense that is not generic burglary under the ACCA, and §§ 30.02(a)(1) and (a)(3) are not divisible.[31] Accordingly, a conviction under § 30.02(a)(1) or (a)(3) is not for generic burglary within the meaning of the Guidelines.[32] Fuentes-Canales was convicted under subsections (a) and (d) of § 30.02. Subsection (d) is essentially, though not precisely, a combination of subsections (a)(1) and (a)(3) from an elements standpoint. Subsection (d) provides that unlawfully entering a habitation is a first-degree felony if "any party to the offense entered the habitation with intent to commit a felony other than felony theft or committed or attempted to commit a felony other than felony theft."[33] Like subsection 30.02(a)(3), the defendant need not have the intent to commit a felony at the time of unlawful entry, and therefore a conviction under § 30.03(d) is not for generic burglary.[34]

The district court's error in applying a 16-level enhancement for the conviction under § 30.02(a) and (d) is clear because "as long as the error was plain as of . . . the time of appellate review . . . the error is 'plain' within the meaning of the Rule. And the Court of Appeals 'may . . . conside[r]' the error

---

[29] *See Hinkle*, 832 F.3d at 574-75.

[30] *United States v. Murillo-Lopez*, 444 F.3d 337, 344-45 (5th Cir. 2006).

[31] 883 F.3d 517, 536-37 (5th Cir. 2018) (en banc).

[32] *Id.*

[33] TEX. PENAL CODE ANN. § 30.02(d)(2) (West 2008).

[34] *See United States v. Herrold*, 883 F.3d 517, 526-29, 536-37 (5th Cir. 2018).

even though it was 'not brought to the [trial] court's attention.'"[35]  This court's decision in *Herrold* is now the law of this Circuit.

## B

To satisfy the third prong of plain-error review, "the defendant ordinarily must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different."[36]  The Supreme Court has explained that "[w]hen a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."[37]  The Court has also explained that, "[w]here . . . the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights."[38]  In other contexts, the Supreme Court has said "[a] reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of the trial.'"[39]

---

[35] *Henderson v. United States*, 568 U.S. 266, 268 (2013) (quoting FED. R. CRIM. P. 54(b)); *United States v. Escalante-Reyes*, 689 F.3d 415, 423 (5th Cir. 2012) (en banc).

[36] *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1904-05 (2018) (quoting *Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016)).

[37] *Molina-Martinez*, 136 S. Ct. at 1345.

[38] *Id.* at 1347.

[39] *Smith v. Cain*, 565 U.S. 73, 75 (2012) (considering a claim that the state withheld exculpatory evidence) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)); *see also United States v. Bagley*, 473 U.S. 667, 682 (1985) (considering claim that evidence that could have been used for impeachment was withheld); *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (considering ineffective assistance of counsel claim); *cf. Lee v. United States*, 137 S.Ct. 1958, 1967-68 (2017) ("In the unusual circumstances of this case, we conclude that Lee has adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to mandatory deportation. There is no question that 'deportation was the determinative issue in Lee's decision whether to accept the plea deal.'").

No. 15-41476

The federal district court stated on the record at Fuentes-Canales's sentencing hearing that, after considering a number of factors, 50 months of imprisonment was appropriate, which was within the 46-to-57-month range the court had determined was the correct Guidelines range. The district court rejected the Government's request for a sentence at the high end of the range, as well as Fuentes-Canales's request for a 36-month sentence. The district court stated that it had considered a sentence less than 50 months since this was the defendant's "first conviction for illegal re-entry," but that "I think the factors that weigh against that [are] the recency of the return following a deportation, the recency of the criminal history and the seriousness of the criminal history." The court also explained that "I think a high range would have been and could have been justified," and "the only reason I'm not doing high end is because it's your first conviction for" illegal re-entry. Fuentes-Canales argues on appeal that absent the 16-level enhancement, he would be subject, at most, to an 8-level enhancement, resulting in a Guidelines range of 18 to 24 months of imprisonment. The record is silent as to the sentence the district court would have imposed had the court known that the advisory sentencing range was 18 to 24 months of imprisonment, since Fuentes-Canales's Texas burglary conviction did not qualify as "generic burglary" under the categorical approach that courts must apply.

This panel's now-withdrawn majority opinion concluded that the third prong of plain-error review had been satisfied and focused primarily on the fourth prong of plain-error review. We have more thoroughly examined the state-court record of Fuentes-Canales's prior conviction for burglary, and now conclude that it is unnecessary to resolve whether the third prong has been satisfied. We will assume, without deciding, that Fuentes-Canales has shown that there is a reasonable probability that, had the district court known that

No. 15-41476

the correctly calculated advisory sentencing range was 18 to 24 months of imprisonment, the court would not have imposed 50 months of imprisonment.

## C

With regard to the fourth prong of plain-error review, the Supreme Court reasoned in *Rosales-Mireles v. United States* that proof that a district court relied on a miscalculated guidelines range "will in the ordinary case . . . seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus will warrant relief" under the fourth prong of plain-error review.[40]  However, the Court recognized that "[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction."[41] This is such a case.

## 1

Ideally, each defendant who committed a "crime of violence" within the meaning of a Guidelines section would receive the same level of enhancement. However, when a state statute, such as Texas Penal Code § 30.02(a) and (d), defines a non-generic offense, the offense level under the sentencing Guidelines will not be enhanced even if the defendant actually committed the generic offense of burglary or committed another generic "crime of violence" in the course of committing non-generic burglary.[42]  While courts cannot consider the factual means by which a defendant committed a prior offense for purposes of

---

[40] *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1903 (2018).

[41] *Id.* at 1909.

[42] *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016) ("A crime counts as 'burglary' under the [ACCA] if its *elements* are the same as, or narrower than, those of the generic offense.  But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries.") (emphasis in original).

arriving upon the correct Guidelines sentencing range,[43] the defendant's actual commission of a "crime of violence" or other evidence regarding the defendant—if sufficiently supported by the record—may be considered in imposing a sentence well outside the advisory Guidelines range.[44]  Such a sentence does not adversely affect the fairness, integrity, or public reputation of judicial proceedings.  By analogy, the fairness, integrity, or public reputation of judicial proceedings is not adversely affected if an appellate court declines to vacate a sentence at the fourth prong of plain-error review on the basis that the defendant, who, as a factual matter (beyond a reasonable doubt in this case), committed a generic crime of violence has been treated the same as similarly situated defendants convicted of a generic crime of violence.

The Supreme Court reaffirmed in *Rosales-Mireles* that "[o]f course, any exercise of discretion at the fourth prong of *Olano* inherently requires 'a case-specific and fact-intensive' inquiry,"[45] and in *Puckett v. United States*, the Court "emphasized that a 'per se approach to plain-error review is flawed.'"[46] In *Rosales-Mireles* the inquiry was straightforward.  The presentencing report erroneously double-counted one of the defendant's prior state-law

---

[43] *See*, *e.g.*, *United States v. Hinkle*, 832 F.3d 569, 572 (5th Cir. 2016) ("In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, we have generally looked only to the elements of the prior offense, not to the actual conduct of the defendant in committing the offense.").

[44] *See*, *e.g.*, 18 U.S.C. § 3553; *Gall v. United States*, 552 U.S. 38, 58 (2007) (concluding, in upholding a sentence of probation when the Guidelines sentencing range was 30 to 37 months of imprisonment,  that "[g]iven the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future.  Indeed, his consideration of that factor finds support in our cases.")

[45] *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1909 (2018) (citing *United States v. Olano*, 507 U.S. 725 (1993)) (quoting *Puckett v. United States*, 556 U.S. 129, 142 (2009)).

[46] 556 U.S. at 142 (quoting *United States v. Young*, 470 U.S. 1, 17 n.14 (2009)).

misdemeanor assault convictions, resulting in an incorrect guidelines range.[47] The Supreme Court held that resentencing was appropriate because the first three prongs of plain error were met, and no "countervailing factors" suggested that "the fairness, integrity, and public reputation of the proceedings w[ould] be preserved absent correction."[48]

In *Puckett*, by contrast, the defendant contended that the Government had violated a plea agreement and argued that the fourth prong was always satisfied in such a case.[49]  The Court disagreed, reasoning, "[i]t is true enough that when the Government reneges on a plea deal, the integrity of the system may be called into question, but there may well be countervailing factors in particular cases."[50]  The Court explained that "Puckett is again a good example: Given that he obviously did not cease his life of crime, receipt of a sentencing reduction for acceptance of responsibility would have been so ludicrous as itself to compromise the public reputation of judicial proceedings."[51]  The present case is analogous.

**2**

A careful review of Fuentes-Canales's conviction for burglary reveals that the state-court jury *necessarily* found (based on the state court's instructions and charge) that Fuentes-Canales committed generic burglary or generic aggravated assault or both.  Each of those offenses is a "crime of violence" as defined in § 2L1.2(b)(A)(ii) of the 2014 Guidelines.  Though Fuentes-Canales's conviction could not support the 16-level enhancement, his criminal history is substantially understated in light of the facts underlying his particular criminal conduct.  In sentencing a defendant, a federal district

---

[47] *Rosales-Mireles*, 138 S.Ct. at 1905.

[48] *Id.* at 1909.

[49] *Puckett v. United States*, 556 U.S. 129, 142 (2009).

[50] *Id.* at 142-43.

[51] *Id.* at 143.

court could consider the facts underlying a prior conviction if adequately supported by evidence.[52] In the present case, there is not only evidence, but a finding by a jury beyond a reasonable doubt, that Fuentes-Canales committed a crime of violence.

Though Fuentes-Canales was convicted under a non-generic burglary statute, the instructions and charge given to the Texas jury did not permit it to find Fuentes-Canales guilty unless the jury found all the elements of either (1) generic burglary or (2) generic aggravated assault, which is also a "crime of violence" defined by the Guidelines as an offense under state law "that has as an element the use, attempted use, or threatened use of physical force against the person of another."[53] This can be ascertained from the indictment and the written jury instructions and charge.

The Texas jury said in written findings: "We, the jury, unanimously find the defendant, [Fuentes-Canales], GUILTY of burglary of a habitation with intent to commit a felony, as charged in the indictment." The indictment alleged the elements of "generic burglary."[54] Similarly, the state trial court's written instructions to the jury said, "[o]ur law provides that [sic] person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person enters a habitation with intent to commit theft or any felony."

---

[52] *See, e.g., United States v. Herrera-Garduno*, 519 F.3d 526, 530-31 (5th Cir. 2008).

[53] U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii); cmt. n.1(B)(iii); cmt. n.5 (U.S. Sentencing Comm'n 2014).

[54] *See, e.g., Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016) (reiterating that "burglary [is] a crime 'contain[ing] the following elements: an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime'") (quoting *Taylor v. United States*, 495 U.S. 575, 598) (1990)); *Taylor*, 595 U.S. at 598 ("[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.").

No. 15-41476

Although the indictment and jury instructions also permitted the jury to convict Fuentes-Canales of non-generic burglary,[55] the jury was instructed that it could not convict him of this means of committing burglary unless it found that he committed or attempted to commit aggravated assault after he unlawfully entered. The indictment did not define "aggravated assault," but the definition in the state trial court's charge to the jury set forth the elements of generic aggravated assault. The instructions informed the jury that "[o]ur law provides that a person commits the offense of aggravated assault if the person intentionally or knowingly threatens another with imminent bodily injury and the person uses or exhibits a deadly weapon during the commission of the offense." The jury was also instructed that if it unanimously found that Fuentes-Canales "did then and there unlawfully, intentionally or knowingly enter a habitation without the effective consent of Sandra Fuentes, the owner thereof, and did then and there commit or attempt to commit a felony other

---

[55] The indictment alleged, in its entirety:

FUENTES, CARLOS ALBERTO, Defendant,

On or about the 18th day of August A.D., 2008 in the County of Dallas and said State, did

unlawfully, intentionally and knowingly enter a habitation without the effective consent of SANDRA FUENTES, the owner thereof, with the intent to commit a felony other than theft, namely, AGGRAVATED ASSAULT,

And further, said Defendant did unlawfully, intentionally and knowingly enter a habitation without the effective consent of SANDRA FUENTES, the owner thereof, and did then and there commit and attempt to commit a felony other than theft, namely, AGGRAVATED ASSAULT,

And it is further presented in and to said Court that a deadly weapon, to-wit: A KNIFE, was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the defendant used or exhibited said deadly weapon or was a party to the aforesaid offense and knew that a deadly weapon would be used or exhibited.

14

than theft, namely, aggravated assault, then you will find the defendant guilty as charged in the indictment." These instructions were based on Texas Penal Code §§ 22.01(a)(2)[56] and 22.02(a)(2).[57] This court has held that such an offense is generic "aggravated assault" and therefore a "crime of violence" within the meaning of the Guidelines.[58]

Accordingly, there were only three possibilities as to what the jury found in saying "[w]e, the jury, unanimously find the defendant [Fuentes-Canales], GUILTY of burglary of a habitation with intent to commit a felony, as charged in the indictment." One is that the jury found, as permitted by the court's instructions, that at the time Fuentes-Canales unlawfully entered the premises, he intended to commit a felony. That is generic burglary.

A second possibility is that the jury convicted Fuentes-Canales of non-generic burglary under Texas Penal Code § 30.02(d) by finding that he unlawfully entered a habitation and committed or attempted to commit generic aggravated assault. If the jury found Fuentes-Canales guilty of non-generic burglary, and therefore, *necessarily* found that he intentionally or knowingly

---

[56] *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (holding that TEX. PENAL CODE § 22.01(a) "sets out three separate and distinct assaultive crimes," noting that (a)(1) "'bodily injury' assault is a result-oriented assaultive offense and normally a Class A misdemeanor" while (a)(2) "is conduct-oriented, focusing upon the act of making a threat regardless of any result that threat might cause," and "is normally a Class C misdemeanor.")

[57] *See* TEX. PENAL CODE § 22.01(a)(2) (2008) [8-18-2008, date of offense] ("A person commits an offense if the person . . . intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse"); § 22.02(a)(2) (defining "aggravated assault") ("A person commits an offense if the person commits assault as defined in § 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault.").

[58] *See United States v. Sanchez-Sanchez*, 779 F.3d 300, 304-05 (5th Cir. 2015); *see also id.* at 305 ("In the Fifth Circuit, '[t]he generic, contemporary meaning of aggravated assault is an assault carried out under certain aggravating circumstances.' Among those circumstances we have listed 'use of a deadly weapon.'") (alteration in original) (quoting *United States v. Esparza-Perez*, 681 F.3d 228, 233 (5th Cir. 2012) and *United States v. Fierro–Reyna*, 466 F.3d 324, 329 (5th Cir.2006)); *Esparza-Perez*, 681 F.3d at 231 ("Assault . . . requires proof that the defendant either caused, attempted to cause, or threatened . . . to cause bodily injury or offensive contact to another person.").

threatened another person with imminent bodily injury and that he used or exhibited a deadly weapon, that is a finding that Fuentes-Canales also committed an offense that came within the "force clause" of the "crime of violence" definition in the Guidelines.   Under the Guidelines, "crime of violence" includes "any . . . offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."[59]   This court has held that "[t]here can be no question that a crime under Texas Penal Code § 29.03(a)(2), that is, threatening someone with imminent bodily injury or death . . . while using or exhibiting a deadly weapon in the course of committing theft with intent to obtain or maintain control of the property, has as an element the threatened use of physical force against the person of another."[60]   The same reasoning applies to aggravated assault, as defined in the state court's charge to the jury and the corresponding provisions of Texas Penal Code §§ 22.01(a)(2) and 22.02(a)(2).

The third possibility is that the jury found that Fuentes-Canales committed both generic burglary and generic aggravated assault.   In that event, the jury also found that he committed an offense coming within the "force" clause of the Guidelines' definition of a "crime of violence."

The charge required the jury to find either the *elements* of generic burglary or the *elements* of generic aggravated assault, not just the means of committing burglary.[61]   Fuentes-Canales had every incentive in the state trial

---

[59] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii); cmt. n.1(B)(iii) (U.S. SENTENCING COMM'N 2014).

[60] *United States v. Lerma*, 877 F.3d 628, 636 (5th Cir. 2017) (applying the "force" clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)).

[61] *Cf. Mathis v. United States*, 136 S.Ct. 2243, 2253 (2016) ("[A]n elements-focus avoids unfairness to defendants. Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary.   At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he 'may have good reason not to'—or even be precluded from doing so by the court.   When that is true, a prosecutor's or judge's mistake as to means,

court to contest vigorously that he intended to commit a felony when he unlawfully entered his former wife's home, and to contest vigorously that he committed or attempted to commit generic aggravated assault after he unlawfully entered. Unless there was a reasonable doubt on both scores, the jury could convict him.[62]

In *Rosales-Mireles*, the Supreme Court provided fresh guidance regarding the fourth prong of plain error review when a Guidelines sentencing range has been improperly calculated.[63] The Court reasoned that "an error resulting in a higher range than the Guidelines provide usually establishes a reasonable probability that a defendant will serve a prison sentence that is more than 'necessary' to fulfill the purposes of incarceration."[64] In the present case, an error occurred that resulted in a range that was higher than the Guidelines provide, but the facts of this case do not establish that Fuentes-Canales will serve a prison sentence that is more than "necessary" to fulfill the purposes of incarceration. Though the sentence is above the correct Guidelines range, it nevertheless "achiev[es] uniformity and proportionality in sentencing."[65] Fuentes actually committed a crime just as serious as, if not more serious than, generic burglary.

**3**

Fuentes-Canales's receipt of a sentence that would be imposed in the mine run of cases in which the defendant was previously convicted of generic burglary also does not call the integrity of the *judicial system* into question,

---

reflected in the record, is likely to go uncorrected. Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.") (citations omitted) (quoting *Descamps v. United States*, 133 S.Ct. 2276, 2283-89 (2013)).

[62] *Cf. id.*

[63] *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1907-11 (2018).

[64] *Id.* at 1907.

[65] *Id.* at 1908.

given the specific facts of Fuentes-Canales's prior offense.[66]  In addition to the Texas jury's finding that Fuentes-Canales committed either generic burglary or generic aggravated assault, or both, there is compelling evidence, unchallenged and unrebutted by Fuentes-Canales that, as a factual matter, he did commit the generic crime of burglary and used a deadly weapon in the process.  This evidence is found in a description of the facts underlying the Texas burglary offense in the PSR, which relied on the state-court indictment and an "Affidavit for Arrest Warrant or Capias," (Affidavit).  The indictment and Affidavit are attached to the PSR.  Fuentes-Canales did not object to the PSR or contest the accuracy of its factual description of his conduct before and during the offense for which he was convicted under Texas Penal Code § 30.02(a) and (d).  "If information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate, or reliable."[67]

The PSR and the state-court Affidavit reflect that Fuentes-Canales called his former wife, threatened to kill her during that call, and an hour later, at approximately 10:25 p.m., he entered her home without her permission and with no right to be on the premises.  When she heard noises at the back, sliding-glass door, she thought it was her son attempting to enter her home.  She exited her bedroom and encountered Fuentes-Canales in the hallway holding three of her kitchen knives.   He pressed the knives against her abdomen and

---

[66] *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (noting appellate courts' discretion to remedy an error under prong four "ought to be exercised *only if* the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'") (alteration in original) (emphasis added) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[67] *United States v. Landerman*, 167 F.3d 895, 898 n.2 (5th Cir. 1999) (quoting *United States v. Angulo*, 927 F.2d 202, 205 (5th Cir. 1991)); *see generally United States v. Nava*, 624 F.3d 226, 231-32 (5th Cir. 2010); *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007); *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006).

threatened to kill her.  When he realized their seven-year-old daughter Keire was witnessing the assault of her mother, he grabbed Keire and fled from the residence with her in his arms.  His former wife shouted that she was calling the police.    Fuentes-Canales re-entered the home, grabbed the phone, "smashed it on the floor," and again fled, leaving Keire in the front yard.  His former wife called 911 on another phone.  The responding officer, upon entering the home, observed three knives on an end table in the living room and a "smashed" phone on the hallway floor of the residence.

During the sentencing phase of the state trial, the jury found in another special issue that Fuentes-Canales used or exhibited a deadly weapon during the commission of the offense for which he had been convicted.[68]  In his briefing in our court, Fuentes-Canales states that this finding "relates only to whether the state judge could order community supervision," and "does not relate to any element of the offense itself."[69]  However, the jury's finding increased the statutory minimum sentencing range, and Texas law required that a unanimous jury make the requisite finding.

---

[68] The special issue read, "We, the jury, unanimously find the defendant **did** use or exhibit a deadly weapon during the commission of the offense." (Emphasis in original).

[69] At the time Fuentes-Canales committed the Texas offense, TEX. CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2) (West Supp. 2013), which was repealed effective January 1, 2017, provided that the discretion given to a judge to place a defendant on community supervision did not apply

> to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom, and that the defendant used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.  On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court.  On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

No. 15-41476

In light of the record in this case, we cannot conclude that the public reputation of judicial proceedings is compromised because Fuentes-Canales's sentencing range was derived from an erroneously imposed 16-level enhancement, when other defendants, convicted of far less culpable conduct, properly receive such an enhancement under the Guidelines. Nor can we say that the error in applying a 16-level enhancement seriously affects the fairness or integrity of judicial proceedings in light of the facts of this case. The 50-month sentence that he received is comparable to sentences that would be imposed on those who committed a comparable prior offense.

We therefore conclude that we should not exercise our discretion to correct the district court's error in applying a 16-level enhancement based on the Texas conviction under Texas Penal Code § 30.02(a) and (d).

\* \* \*

The judgment of the district court is AFFIRMED.