# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40773

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CYNTHIA LUNA RODRIGUEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:16-CR-1156-1

Before WIENER, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Cynthia Luna Rodriguez was convicted of bank fraud and embezzlement. The district court sentenced her to 85 months in prison, a term within the advisory range calculated under the Sentencing Guidelines. She appeals her sentence based on the application of three Guidelines enhancements. We find no error in two but vacate the sentence for plain error in the application of the third.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40773

## I.    Facts and Proceedings

Rodriguez pleaded guilty to two counts of bank fraud involving four bank customers and one count of embezzlement by a bank employee. At her rearraignment, Rodriguez admitted that she withdrew money without authorization from customer accounts while employed at First National Bank and its successor, PlainsCapital Bank ("the Bank"), between 2006 and 2014. Rodriguez misdirected account statements and prepared false documents to hide the unauthorized withdrawals. She targeted customers who were less likely to monitor their accounts, such as the elderly or those living out of this country. If a customer complained about missing statements or if an account was set to be closed, Rodriguez would backfill it with money taken from other customer accounts. Rodriguez tampered with the accounts of eleven customers, four of whose accounts were ultimately closed with the correct balances. Rodriguez admitted to withdrawing a total of more than one million dollars, and her Presentence Investigation Report ("PSR") determined the amount to be at least $1.4 million.

In determining the advisory imprisonment range, the district court applied the 2016 edition of the Sentencing Guidelines, which was in effect at the time of sentencing, rather than the 2013 edition, which was in effect at the conclusion of Rodriguez's crimes. The court's Guidelines calculation resulted in a range of 78 to 97 months' imprisonment. The court sentenced Rodriguez to three concurrent terms of 85 months in prison, plus restitution and three years of supervised release.

Rodriguez appeals the application of three enhancements to her offense level under the Guidelines: (1) section 2B1.1(b)(16)(A) for a defendant who derived more than $1,000,000 in gross receipts from a financial institution, (2) section 3A1.1(b)(1) for a defendant who knew or should have known that a

No. 18-40773

victim of the offense was vulnerable, and (3) section 2B1.1(b)(2)(A)(iii) for an offense resulting in substantial financial hardship to at least one victim.

## II.    Standard of Review

When a defendant has preserved a sentencing issue by objecting in the district court, this court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Alaniz*, 726 F.3d 586, 618 (5th Cir. 2013) (quoting *United States v. Johnston*, 127 F.3d 380, 403 (5th Cir. 1997)).

When a defendant has failed to object before the district court, "our review is for plain error under Federal Rule of Criminal Procedure 52(b)."[1] *United States v. Fuentes-Canales*, 902 F.3d 468, 473 (5th Cir. 2018). Under plain error review, the defendant has the burden to show "(1) an error; (2) that is clear and obvious; and (3) that affected h[er] substantial rights." *United States v. Hernandez-Martinez*, 485 F.3d 270, 273 (5th Cir. 2007). If all three conditions are present, the court may exercise its discretion to correct the error "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

## III.    Analysis

A.    Gross Receipts Under Section 2B1.1(b)(16)(A)

Rodriguez argues that the district court erred by applying the two-level enhancement from Guidelines section 2B1.1(b)(16)(A), which applies if the "the defendant derived more than $1,000,000 in gross receipts from one or more

---

[1] "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b).

financial institutions as a result of the offense," because the court only ordered $711,088.08 in restitution to the Bank. U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(16)(A) (U.S. SENTENCING COMM'N 2016).[2]

Rodriguez objected in the district court to the application of the section 2B1.1(b)(16)(A) enhancement on the grounds that there was insufficient evidence that Rodriguez obtained more than $1,000,000 in gross receipts. We review the sufficiency of the evidence supporting the enhancement for clear error. *See Johnson*, 619 F.3d at 472. The PSR applied the enhancement after determining that Rodriguez "appropriated a combined total of approximately $1,424,052.98 from numerous [Bank] account holders" and that her gross receipts from the Bank equaled that amount. The district court adopted the PSR's finding as "well supported by the record." Rodriguez failed to offer any rebuttal evidence, so the district court was free to adopt the PSR's factual finding of the amount of the gross receipts without further inquiry. *See United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990).

Rodriguez also implicitly contends that the district court applied the wrong interpretation of "gross receipts" as used in section 2B1.1(b)(16)(A). Rodriguez did not raise this issue below, so we review it for plain error. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 806 (5th Cir. 2008). We conclude that there is no error at all. The Guidelines application notes define the phrase "[g]ross receipts from the offense" as "all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." U.S.S.G. § 2B1.1 cmt. n.12(B). Rodriguez contends that the gross receipts derived from the Bank for purposes of the section 2B1.1(b)(16)(A) enhancement should only be either the Bank's portion of the total loss as

---

[2] The Guidelines provisions relevant to this issue are identical in the 2013 and 2016 editions.

determined under section 2B1.1(b)(1) or the amount of restitution owed to the Bank. The total loss calculated under section 2B1.1(b)(1), however, is subject to various exclusions, credits, and special rules. *See* U.S.S.G. § 2B1.1 cmt. n.3. Similarly, while restitution is based on "the full amount of the victim's loss," U.S.S.G. § 5E1.1(a)(1), that term has been interpreted to mean net, not gross, loss. *See United States v. Beydoun*, 469 F.3d 102, 107–08 (5th Cir. 2006) (explaining that a victim should not receive more in restitution than is required to make him whole and that, in a commercial setting, a victim is entitled only to net lost profits).

On the other hand, "gross" is "routinely defined as an overall total exclusive of deductions," meaning that gross receipts "consist of the entire amount [received], less nothing." *United States v. Gharbi*, 510 F.3d 550, 555 (5th Cir. 2007) (internal quotation marks and citation omitted) (concluding that gross receipts include all fraudulently obtained funds, even the portion used to pay legitimate debts). The district court thus did not err in interpreting "gross receipts from one or more financial institutions" to mean the total amount of the funds that Rodriguez misappropriated from the Bank before any setoffs or reductions.[3] Neither did the district court err in accepting the amount of those gross receipts as calculated in the PSR.

B.    Vulnerable Victim Under Section 3A1.1(b)(1)

Rodriguez also argues that the district court erred in applying the two-level enhancement from section 3A1.1(b)(1), which applies if "the defendant knew or should have known that a victim of the offense was a vulnerable victim," because the court applied the enhancement based solely on the victims'

---

[3] Here, the "setoffs or reductions" are largely the funds that Rodriguez stole from one account but, in order to conceal her crimes, deposited into another account from which she had previously stolen.

advanced age. U.S.S.G. § 3A1.1(b)(1) (2016).[4] Rodriguez objected in the district court to the application of the section 3A1.1(b)(1) enhancement on the grounds that there was insufficient evidence that Rodriguez knew or should have known that any victims were vulnerable. Therefore, "[w]e review the district court's interpretation of the guidelines de novo[, and] we review a finding of unusual vulnerability for clear error and to determine whether the district court's conclusion was 'plausible in light of the record as a whole.'" *United States v. Robinson*, 119 F.3d 1205, 1218 (5th Cir. 1997) (quoting *United States v. Scurlock*, 52 F.3d 531, 539 (5th Cir. 1995)).

The Guidelines application notes define a "vulnerable victim" as one "who is unusually vulnerable due to *age*, physical *or* mental condition, *or* who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b) cmt. n.2 (emphasis added). Rodriguez cites to a Tenth Circuit holding that the enhancement cannot be applied based on age alone, but rather requires "a nexus between the victim's vulnerability and the crime's ultimate success." *United States v. Lee*, 973 F.2d 832, 834 (10th Cir. 1992). We have not articulated the requirements of vulnerability precisely that way, but we have held that vulnerability is "not reducible to a calculation of the victim's age." *United States v. Brown*, 7 F.3d 1155, 1160 (5th Cir. 1993); *but see United States v. Patel*, 485 F. App'x 702, 719 (5th Cir. 2012) (unpublished) (citing advanced age of patient who suffered delayed surgery as evidence of vulnerability); *United States v. Thomas*, 384 F. App'x 394, 397 (5th Cir. 2010) (unpublished)

---

[4] The Guidelines provisions relevant to this issue are identical in the 2013 and 2016 editions.

(pointing to advanced age of carjacking victims alone to find vulnerability plausible on the record).

Here, however, the district court's finding of vulnerability was based on more than age alone and was plausible in light of the record as a whole. The court found that Rodriguez targeted elderly victims who, because they were elderly, had limited access to the Bank, had little activity on their accounts, and relied on Rodriguez to manage their accounts. The record further reflects that some of the victims had only a seventh-grade education and were in declining health. We conclude that the district court did not err in applying the section 3A1.1(b)(1) enhancement.

C.    Section 2B1.1(b)(2)(A) Under the 2016 Guidelines

Rodriquez also insists that the district court violated the Ex Post Facto Clause of the Constitution by applying a Guidelines enhancement that did not exist when she committed her crimes. Rodriguez did not raise this issue in the district court, so we review it for plain error. *See Fuentes-Canales*, 902 F.3d at 473. A court must apply the Guidelines in effect at the time of sentencing, unless doing so would violate the Ex Post Facto Clause. U.S.S.G. § 1B1.11; *United States v. Rodarte-Vasquez*, 488 F.3d 316, 322 (5th Cir. 2007). "It is settled that the Ex Post Facto Clause is violated when a sentencing court uses a Guidelines edition generating a higher sentencing range than the range of the edition in effect on the date of the defendant's criminal conduct." *United States v. Urbina-Fuentes*, 900 F.3d 687, 692 (5th Cir. 2018).

Section 2B1.1(b)(2)(A) of the 2016 edition of the Guidelines, which the district court applied, provides for an enhancement of two levels when the offense "(i) involved 10 or more victims; (ii) was committed through mass-marketing; or (iii) resulted in substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A) (2016). The same section in the 2013 edition of the Guidelines, which was in effect at the conclusion of Rodriguez's criminal

conduct, does not contain subsection (iii) and therefore does not allow an enhancement for "substantial financial hardship to one or more victims." *See* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(2)(A) (U.S. SENTENCING COMM'N 2013). The district court applied the 2016 version of the section 2B1.1(b)(2)(A) enhancement based solely on the substantial financial hardship rationale of subsection (iii). The court explicitly declined to apply subsection (i) because it found that, even though there were more than ten victims of Rodriguez's crime in the colloquial sense of the word, there were fewer than ten victims as the term is defined in the Guidelines.

The section 2B1.1(b)(2)(A) enhancement increased Rodriguez's offense level by two levels, to 28, resulting in a Guidelines imprisonment range of 78 to 97 months. U.S.S.G. Ch. 5, Pt. A (2016); U.S.S.G. Ch. 5, Pt. A (2013). Had the enhancement not been applied, Rodriguez's offense level would have been 26, with an imprisonment range of 63 to 78 months. *See* U.S.S.G. Ch. 5, Pt. A (2016); U.S.S.G. Ch. 5, Pt. A (2013). Because the application of the 2016 Guidelines "generat[ed] a higher sentencing range than the range of the edition in effect on the date of the defendant's criminal conduct," it violated the Ex Post Facto Clause and was an error. *Urbina-Fuentes*, 900 F.3d at 692. Furthermore, the error was clear and obvious, and, by imposing a significant risk of a higher sentence, affected Rodriguez's substantial rights. *See United States v. Kiekow*, 872 F.3d 236, 249 (5th Cir. 2017) (holding that the calculation of an erroneous Guidelines range that overlapped the proper range by one month satisfied the first three prongs of plain error).

The Government argues that there was no error, or that the court should not exercise its discretion to correct any error, because a proper application of either the 2013 or 2016 Guidelines would have resulted in the section 2B1.1(b)(2)(A) enhancement being applied via subsection (i), which is triggered when the offense involved 10 or more victims, rather than subsection

(iii), on which the district court relied. *See* U.S.S.G. § 2B1.1(b)(2)(A) (2016); U.S.S.G. § 2B1.1(b)(2)(A) (2013). According to the Government, the district court should have included in the victim count some victims who might have lost out on interest payments before their stolen money was restored or whose money Rodriguez did not return until after her offense was detected.

Subsection 2B1.1(b)(2)(A)(i) allows for a two-level enhancement "[i]f the offense . . . involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A) (2016); U.S.S.G. § 2B1.1(b)(2)(A) (2013). The Guidelines application notes define "victim" as "any person who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1 cmt. n.1 (2016); U.S.S.G. § 2B1.1 cmt. n.1 (2013). The district court explicitly found that only four victims suffered part of the actual loss that the court calculated under subsection (b)(1). The court was therefore correct in declining to apply section 2B1.1(b)(2)(A)(i), assuming that its determination of the actual loss under subsection (b)(1) was sound.

The Government now attacks the court's determination of the actual loss under subsection (b)(1), but it failed to object at the time of sentencing. The Government's assertion of an offsetting error is therefore, at best, reviewed under the plain error standard. *See United States v. Willingham*, 497 F.3d 541, 544 (5th Cir. 2007) (holding that Government appeals of unpreserved errors at sentencing are reviewed for plain error). It fails under that standard for two reasons. First, the district court's calculation of the loss amount is a factual determination, *see United States v. Scher*, 601 F.3d 408, 412 (5th Cir. 2010), and "[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991). Second, assuming without deciding that the district court committed a legal error with respect to excluding interest or money returned to avoid discovery of the offense from the loss amount, the

No. 18-40773

Government concedes that the law is ambiguous enough that the error is not clear and obvious. There is thus no plain error in the calculation of the loss amount to offset the plain error in the application of a then-nonexistent Guidelines enhancement.

The first three elements of plain error are met, so we may exercise our discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736. "In the ordinary case, . . . the failure to correct a plain Guidelines error that affects a defendant's substantial rights will seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018). The error here was plain and, because it created a significant risk of a higher sentence, affected Rodriguez's substantial rights. *See Kiekow*, 872 F.3d at 249; *see also Peugh v. United States*, 569 U.S. 530, 550 (2013) (holding that Guidelines imposed ex post facto that create a significant risk of a higher sentence "offend[] . . . fundamental justice"). However, "[t]here may be instances where countervailing factors satisfy the court of appeals that the fairness, integrity, and public reputation of the proceedings will be preserved absent correction." *Rosales-Mireles*, 138 S. Ct. at 1909.

The Government argues that three countervailing factors justify a departure from the ordinary rule to correct errors like this one: (1) There were more than ten victims in the ordinary sense of the word, (2) the victims suffered the loss of significant interest and penalties, which were not included in the calculated loss, and (3) at least one victim who was not due restitution nevertheless lost a valuable insurance policy without compensation. The first two reasons are essentially disagreements with the policy choices of the Guidelines themselves and therefore cannot rationalize a misapplication of the Guidelines. But even if they were viable rationales, the record contains no evidence as to the amount of interest and penalty losses that the victims

10

suffered. As for the third reason, the victim in question was already included in the calculated loss and therefore in the victim count as well for the purpose of the ten-victim enhancement of section 2B1.1(b)(2)(A)(i). Furthermore, preserving Rodriguez's sentence based on that victim's financial hardship would effectively write the 2016 subsection (iii) back into the 2013 Guidelines. Rather, this is an ordinary case of a plain Guidelines error affecting a defendant's substantial rights, and we accordingly vacate and remand for resentencing. *See Kiekow*, 872 F.3d at 249 (vacating sentence imposed after use of wrong Guidelines year produced an advisory range overlapping the correct range by one month).

## IV. Conclusion

The district court did not err in applying enhancements under Guidelines sections 2B1.1(b)(16)(A) or 3A1.1(b)(1) but did commit plain error in applying the section 2B1.1(b)(2)(A) enhancement based on a provision not present in the 2013 Guidelines. We VACATE the sentence and REMAND for resentencing.

11